TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-527 |
| of | : | |
| | : | November 22, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MICHAEL C. FITZPATRICK, CITY ATTORNEY, CITY OF ANDERSON, has requested an opinion on the following question:

May a general law city adopt an ordinance imposing strict liability upon a parent for the failure to supervise his or her child who violates a criminal provision of the municipal code?

CONCLUSION

A general law city may not adopt an ordinance imposing strict liability upon a parent for the failure to supervise his or her child who violates a criminal provision of the municipal code.

ANALYSIS

The question presented for resolution concerns a proposed ordinance of a general law city that would make it a criminal infraction for a parent to not properly supervise his or her child as evidenced by the child violating a criminal provision of the municipal code. The proposed ordinance would impose strict liability upon a parent for the failure to supervise a child who commits such criminal acts as littering, disturbing the peace, possessing an alcoholic beverage in a city park, defacing a public notice, or riding on the outside of an automobile. We conclude that the city may not enact such an ordinance.

The Supreme Court and Court of Appeal have recently examined the criminal aspects of a parent's failure to supervise a child who commits various violations of state law. Penal Code section 272[1] provides:

> "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of Section 300, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of 18 years or any ward or dependent child of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of Section 300, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment in a county jail, or may be released on probation for a period not exceeding five years. *For purposes of this section, a parent or legal guardian to any person under the age of 18 years shall have the duty to exercise reasonable care, supervision, protection, and control over their minor child.*"  (Italics added.)[2]

In *Curry* v. *Superior Court* (1993) 20 Cal.App.4th 180, 188, the court explained:

> ". . . California has recently amended its penal statute governing contributing to the delinquency of a minor to permit the imposition of criminal liability on a parent who fails to make reasonable efforts to control a minor child.  (Pen. Code § 272; see *Williams v. Garcetti* (1993) 5 Cal.4th 561, upholding the constitutionality of the statute.)  In an era of increasing juvenile crime, society is clearly losing its patience with parents who are indifferent to the irresponsible, malicious, or even vicious propensities of their offspring."  (Fn. Omitted.)

In *Williams v. Garcetti* (1993) 5 Cal.4th 561, 571, the court noted that parents have long had a duty to supervise and control their children under California civil law. Thus the court reasoned that the 1988 addition of the requirements of "supervision" and "control" in section 272 did not impose new duties upon parents, but incorporated into the criminal statute the definition and limits of a parent's traditional civil law duty. (*Id*., at pp. 571-572, citing *Singer* v. *Marx* (1956) 144 Cal.App.2d 637.)  The court analyzed a parent's duties under the terms of section 272 as follows:

---

[1]All references hereafter to the Penal Code are by section number only.

[2]Sections 300, 601, and 602 of the Welfare and Institutions Code concern minors subject to the jurisdiction of the juvenile court as dependents, minors habitually disobedient or truant, and minors violating criminal laws, respectively.

"Section 272 holds parents liable only if they are criminally negligent in breaching their duty of supervision and control.  This requirement of criminal negligence arises in part from Penal Code section 20, which provides, `In every crime or public offense there must exist a union, or joint operation of fact and intent, or criminal negligence.'  It also arises in part from the Legislature's use of the term `reasonable' in the amendment.  The duty to act `reasonably' reflects the applicability of the negligence doctrine -- here, criminal, not civil, negligence.

"In the criminal context, `ordinary negligence sufficient for recovery in a civil action will not suffice; to constitute a criminal act the defendant's conduct must go beyond that required for civil liability and must amount to a "gross" or "culpable" departure from the required standard of care.'  (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47.)  It follows that the amendment to section 272 punishes only negligence that exceeds ordinary civil negligence.  We have defined criminal negligence as `"aggravated, culpable, gross, or reckless, that is, . . . such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to [demonstrate] . . . an indifference to consequences."'  (*People* v. *Penny* (1955) 44 Cal.2d 861, 879.)

"The heightened requirements of the criminal negligence standard in regard to breach of duty alleviate any uncertainty as to what constitutes reasonable supervision or control.  Plaintiffs fear the statute punishes parents who could not reasonably know that their child is at risk of delinquency.  As we have seen, however, only a parent who `knows or should know of the necessity and opportunity for exercising . . . control' can be held liable in tort for breaching the duty to control a child.  (*Robertson* v. *Wentz, supra*, 187 Cal.App.3d at p. 1288.)  Similarly, there can be no criminal negligence without actual or constructive knowledge of the risk.  (See *People* v. *Rodriguez* (1960) 186 Cal.App.2d 433, 440.)  In the setting of involuntary manslaughter, for example, `[c]riminal liability cannot be predicated on every careless act merely because its carelessness results in injury to another.  [Citation.]  The act must be one which has knowable and apparent potentialities for resulting in death.  Mere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so.'  (*Ibid.*)  Under the criminal negligence standard, knowledge of the risk is determined by an objective test:  `[I]f a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.'  (*People* v. *Watson* (1981) 30 Cal.3d 290, 296.)  The amendment thus punishes only parents who know or reasonably should know that their child is at risk of delinquency.

"Plaintiffs also fear the statute punishes parents who try but fail to control their children.  In tort law, however, `[t]he duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing.  The parent is not under a duty so to discipline his child as to make it amenable to parental control when its exercise becomes necessary to the safety of others.'  (Rest.2d Torts, § 316, com. b.)  In other words, a parent who

makes reasonable efforts to control a child but is not actually able to do so does not breach the duty of control. This is consistent with the rule that `"there is no [civil] liability upon the parent unless he has had an opportunity to correct specific propensity on the part of the child, and that it is too much to hold the parent responsible for general incorrigibility and a bad disposition."' (*Singer* v. *Marx, supra*, 144 Cal.App.2d at p. 644.) A fortiori, parents who reasonably try but are unable to control their children are not criminally negligent.

"The criminal negligence standard in regard to breach of duty thus provides notice to law-abiding parents that is consistent with and reinforces the notice provided by the amendment's incorporation of the definition and limits of the tort duty of parental supervision and control. The amendment requires parents who know or reasonably should know of the child's risk of delinquency to exercise their duty of supervision and control. This duty consists of undertaking reasonable -- not necessarily successful -- efforts at supervision and control. Omission of this duty owing to simple negligence will not subject the parent to criminal liability; a parent can be convicted only for gross or extreme departures from the objectively reasonable standard of care.

"In sum, we understand the Legislature to have intended the amendment to provide that there is a duty of reasonable restraint of, and discipline for, a child's delinquent acts by parents who know or should know that their child is at risk of delinquency and that they are able to control the child. Parents who intentionally or with criminal negligence fail to perform this duty, and as a result contribute to the delinquency of the child, violate section 272.

"Thus understood, the amendment is specific enough to allow parents to identify and avoid breaches of the duty of supervision and control for which they could be penalized under section 272. The amendment does not trap the innocent. It provides adequate notice to parents with regard to potential criminal liability for failure to supervise and control their children because (1) it incorporates the definition and the limits of a parental duty to supervise and control children that has long been a part of California tort law, and (2) it imposes criminal liability only when the parent engages in conduct that so grossly departs from the standard of care as to amount to criminal negligence." (*Id*., at pp. 573-575.)

*Williams* thus relied heavily upon the civil law standard of responsibility in establishing the requirements of section 272. In this regard, we note that Civil Code section 1714.1 specifically creates a civil liability for parents in the following circumstances:

"(a) Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct.

4. 96-527

"Subject to the provisions of subdivision (c), the joint and several liability of the parent or guardian having custody and control of a minor under this subdivision shall not exceed twenty-five thousand dollars ($25,000) for each tort of the minor, and in the case of injury to a person, imputed liability shall be further limited to medical, dental and hospital expenses incurred by the injured person, not to exceed twenty-five thousand dollars ($25,000). The liability imposed by this section is in addition to any liability now imposed by law.

"(b) Any act of willful misconduct of a minor which results in the defacement of property of another with paint or a similar substance shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, including court costs, and attorney's fees, to the prevailing party, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct, not to exceed twenty-five thousand dollars ($25,000), except as provided in subdivision (c), for each tort of the minor.

"(c) The amounts listed in subdivisions (a) and (b) shall be adjusted every two years by the Judicial Council to reflect any increases in the cost of living in California, as indicated by the annual average of the California Consumer Price Index. The Judicial Council shall round this adjusted amount up or down to the nearest hundred dollars. On or before January 1, 1997, and on or before January 1 of each odd-numbered year thereafter, the Judicial Council shall compute and publish the amounts listed in subdivisions (a) and (b), as adjusted according to this subdivision.

"(d) The maximum liability imposed by this section is the maximum liability authorized under this section at the time that the act of willful misconduct by a minor was committed."

In *Curry* v. *Superior Court*, *supra*, 20 Cal.App.4th at 189, the court stated with respect to Civil Code section 1714.1:

". . . Section 1714.1 clearly expresses the policy that parents should stand in the shoes of their children for the purpose of paying damages caused by the children, for which the children are `judgment proof.' Although the statute does not require proof of fault, we think it is founded on the implicit understanding that a parent has the duty and opportunity to control, supervise, and train his or her child in the ways of responsible behavior. If the parent fails to do so, it is fair to impose liability on the parent -- and, in our view, fair to require the parent to compensate not only the `innocent third party' injured by the child, but also a joint tortfeasor who, due to the child's financial status, would otherwise be required to pay the child's share of the damages caused."

The proposed ordinance would impose strict criminal liability upon a parent whose child violates a municipal ordinance. *Williams*, however, teaches that even "`ordinary negligence

. . . will not suffice . . . to constitute a criminal act . . . .'" A parent may not be subject to penal consequences where reasonable efforts are made but prove to be unsuccessful.

We are aware that in certain limited circumstances, strict criminal liability may be imposed. In *Delfino* v. *Sloan* (1993) 20 Cal.App.4th 1429, 1436, the court recently observed:

> "The California rule has long been that certain statutes or ordinances designed to protect the public health and safety may impose a positive duty, and strict criminal liability for failure to perform that duty, as a substitute for the mens rea of the common law. `Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations [or animal control laws], criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. [Citations.]' (*People* v. *Vogel* (1956) 46 Cal.2d 798, 801, fn. 2; accord, *People* v. *Wells* (1968) 261 Cal.App.2d 468, 478 [`Although criminal statutes are not often construed to impose sanctions in the absence of *mens rea* or guilty intent, an exception occurs where the statute is an expression of a legislative policy to be served by strict liability.']; accord, *People* v. *Martin* (1989) 211 Cal.App.3d 699, 713; *People* v. *Telfer* (1991) 233 Cal.App.3d 1194, 1203.)"

The proposed city ordinance does not come within the categories where strict criminal liability may be imposed "as a substitute for the mens rea of the common law." A violation of the ordinance in question might well carry "moral obloquy or damage to reputation." We follow *Williams* in requiring the imposition of criminal liability only where a parent (1) breaches a duty to supervise and control his or her child that has long been part of California law and (2) engages in conduct which so grossly departs from the standard of care as to amount to criminal negligence. (*Williams* v. *Garcetti*, *supra*, 5 Cal.4th at 575.)[3]

We conclude that a general law city may not adopt an ordinance imposing strict liability upon a parent for the failure to supervise a child who violates criminal provisions on the municipal code.

\* \* \* \* \*

---

[3]Because of the conclusion we reach, we need not address the additional question of whether the Legislature has preempted the field of a parent's criminal conduct in failing to supervise his or her child's conduct.